2007 WY 126

**In the Matter of the Worker's Compensation Claim of Maria ALVAREZ, Appellant (Respondent),**

v.

**STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Petitioner).**

No. 06–139.

Supreme Court of Wyoming.

Aug. 6, 2007.

Representing Appellant: David M. Gosar, Jackson, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

KITE, Justice.

[¶ 1]   After injuring her left rotator cuff at work, Maria Alvarez filed for and received worker's compensation benefits. Two months later, she fell and re-injured her rotator cuff. The Wyoming Workers' Safety and Compensation Division (the Division) denied her claim for benefits for the re-injury on the ground it was caused by the fall and was not work-related. Ms. Alvarez requested a hearing and the Division referred the matter to the Medical Commission. After the hearing, the Medical Commission awarded Ms. Alvarez benefits. The Division filed a petition for review in district court, which reversed the Medical Commission's decision. Ms. Alvarez appealed to this Court and we reverse the district court's order.

## ISSUES

[¶ 2]   Ms. Alvarez presents the following issue:

Should this Court overrule *State. ex rel. Wyo. Workers' Safety and Compensation Division v. Bruhn,* 951 P.2d 373 (Wyo. 1997) and extend benefits to workers who sustain additional injuries while traveling to or from receiving medical care for work-related injuries? In the alternative, should this Court clarify or modify *Bruhn* to extend coverage to workers who, like Mrs. Alvarez, reinjure their original workplace injuries while traveling to or from obtaining medical care for these injuries[?]

The Division phrases the issues as:

I.  Whether the Medical Commission Hearing Panel's order awarding benefits to Appellant constitutes an error of law because Appellant was injured while outside the course and scope of employment, specifically, while traveling from a medical appointment?

II.  Whether the Medical Commission Hearing Panel's order awarding benefits to Appellant constitutes an error of law because the Medical Commission misapplied the "second compensable injury theory?"

## FACTS

[¶ 3]   In June of 2003, Ms. Alvarez suffered a torn left rotator cuff as a result of a work-related incident. She filed a report of injury with the Division. The Division determined her injury was compensable and paid benefits. In September of 2003, her doctor performed surgery to repair the torn supraspinatus tendon involved in her rotator cuff injury.

[¶ 4]   In November of 2003, while she was still recovering from the surgery, Ms. Alvarez fell on two separate occasions—once when she was leaving her physical therapist's office and once at home. After the falls, Ms. Alvarez experienced increased pain in her shoulder. When the pain persisted, her doctor ordered an MRI which revealed a re-tear of the supraspinatus tendon he had previously repaired in the September surgery. He performed a second surgery to repair the re-torn tendon.

[¶ 5]   Ms. Alvarez filed a claim for worker's compensation benefits for the re-torn tendon. The Division denied her claim, maintaining that she had suffered a new injury unrelated to the original work injury. Ms. Alvarez objected to the Division's determination and requested a hearing. The Division referred the case to the Medical Commission.

[¶ 6]   In her Disclosure Statement, Ms. Alvarez claimed that she was entitled to benefits because the re-tear was a "compensable consequence" of the original work injury. The Division claimed the re-tear was caused by a non-work-related fall and was not compensable. Prior to the hearing, the parties agreed that the question for determination was whether Ms. Alvarez's current medical treatment and additional temporary total disability benefits (TTD) were related to her work injury or due instead to an intervening event. To support her claim, Ms. Alvarez presented her doctor's deposition testimony. When asked whether the re-tear was related to the work injury, he testified that in his opinion the re-tear was a continuum in treatment of, and related to, the initial work injury.

[¶ 7]   In his closing argument before the Medical Commission, counsel for Ms. Alvarez argued the re-tear was a compensable consequence of the work injury because it resulted from a fall that occurred as she was leaving a physical therapy appointment she was required to attend as a result of the work injury.   He stated: "It is that connection between the treatment of the work-related injury, and this fall and the additional injury, that is the compensable consequence. . . ." In response, the Division's attorney cited *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Bruhn*, 951 P.2d 373 (Wyo.1997) for the principle that an injury sustained while going to or from a medical appointment occasioned by a work injury is not work related and is, therefore, not compensable.

[¶ 8]   The Medical Commission concluded Ms. Alvarez had met her burden of proving the re-tear and subsequent treatment were compensable.   In its findings of fact, the Medical Commission found that the re-tear was caused by the more significant of the two falls, the fall in the parking lot at the physical therapy facility.   The Medical Commission further found that "the re-tear was occasioned by Ms. Alvarez's attendance at physical therapy," which was part of her overall care and treatment for her work injury.   In its conclusions of law, the Medical Commission concluded: "But for the original work-related injury, Ms. Alvarez would not have been receiving the post-surgery physical therapy at the time of her fall in the parking lot."   Citing *Bruhn*, the Medical Commission further concluded: "Ms. Alvarez was at a place where she was directed to be by her treating physician, and was following her physician's specific orders regarding physical therapy, and the fall in the parking lot was the sole and direct causative factor in the re-injury of her left shoulder, which required an additional surgery." On that basis, the Medical Commission concluded Ms. Alvarez was entitled to benefits for the care and treatment of her left shoulder and continuing TTD benefits.

[¶ 9]   The Division filed a petition for review in district court, which reversed the Medical Commission's order awarding benefits.   In its order, the district court stated:

Although substantial evidence supports the [M]edical [C]ommission's conclusion that the fall on the icy parking lot of the physical therapist caused the re-tear of claimant's rotator cuff, there is not substantial evidence supporting the [M]edical [C]ommission's decision under the second compensable injury rule, the premises rule or any other legal theory alluded to in the Commission's decision.

Causation is the common denominator in both the second compensable injury rule and the premises rule and, in both instances, the record is devoid of any evidence causally linking the first compensable work injury to the injury sustained by Claimant in the parking lot of her physical therapist. Specifically, there is no testimony establishing the first compensable injury as a cause of the re-tear.

Ms. Alvarez appeals from the district court's order.

**STANDARD OF REVIEW**

■ [¶ 10]   In an appeal from a district court's decision on a petition for review of administrative action, we afford no deference to the district court's decision and, instead, review the case as if it came directly from the agency.   *Bonsell v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2006 WY 114, ¶ 7, 142 P.3d 686, 688 (Wyo.2006).   Judicial review of agency decisions is limited to those considerations specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.   In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.   The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Additionally, we have said:

> The substantial evidence test is the appropriate standard of review in appeals from contested case proceedings when factual findings are involved and both parties submit evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence. Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may still be found to be arbitrary or capricious for other reasons. An appellate court does not examine the record only to determine if there is substantial evidence to support the agency's decision, but it also must examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it.
>
> We do not defer to the agency's determination on issues of law; instead, we will correct any error made by the agency in either interpreting or applying the law.

*Bonsell,* ¶ 8, 142 P.3d at 688–89 (citations omitted).

## DISCUSSION

[¶ 11] Given the emphasis placed on *Bruhn* by both the Division and the Medical Commission, Ms. Alvarez frames the issue for our determination as being dependent on the meaning of this Court's holding in that case. She asserts that this Court should overrule *Bruhn* and extend benefits to employees injured while traveling to or from medical treatment for work-related injuries or, alternatively, clarify *Bruhn* to allow benefits when an employee re-injures a work injury while traveling to or from medical treatment for the work injury. The Division argues in essence that *Bruhn* does not allow benefits under Ms. Alvarez's circumstances and the Medical Commission erred when it

awarded her benefits. The Division also contends the Medical Commission incorrectly applied the second compensable injury rule to award Ms. Alvarez benefits because her work injury was not the sole and direct cause of her subsequent injury. We conclude that *Bruhn* does not govern the outcome of this case; rather, the second compensable injury rule applies. Before addressing that issue, however, we mention one other matter.

[¶ 12] Neither party claims nor has claimed that the Medical Commission was without authority to decide this case. However, we find it appropriate to emphasize that the case was properly decided by the Medical Commission because it was a medically contested case in which the primary issue required the application of medical judgment to complex medical facts. *McIntosh v. State ex rel. Wyo. Med. Comm'n,* 2007 WY 108, 162 P.3d 483, (2007).

[¶ 13] When the Division referred this case to the Medical Commission, the parties agreed the primary issue was whether Ms. Alvarez's current medical treatment and additional TTD were related to her work injury, or due to the intervening falls. In her disclosure statement, the claimant asserted the re-tear was a "compensable consequence" of the original work injury. The Division claimed the re-tear was caused by a fall that was not work-related but rather was a new non-compensable injury. To support her claim, Ms. Alvarez presented the testimony of her doctor. In response to the question of whether the re-tear was related to the work injury, he testified that in his opinion the re-tear and subsequent surgery was a continuum in treatment of, and related to, the initial work injury. The Medical Commission awarded the claimant benefits, finding she had met her burden of proving the re-tear was compensable.

[¶ 14] The primary issue for determination by the Medical Commission required the application of medical judgment to complex medical facts. The panel was required to decide based upon the evidence presented whether the re-tear was related to the initial work injury, making it compensable. The evidence presented consisted primarily of the

claimant's testimony, her medical records and her treating physician's deposition testimony. The Medical Commission's decision was based on medical records and opinion concerning the medically contested issue presented for determination at the contested case hearing. Thus, the Medical Commission had authority to decide the case.

[¶ 15] Returning to the express issue presented, we conclude based upon our review of the record, that resolution of Ms. Alvarez's case does not require that *Bruhn* be overruled. In *Bruhn,* this Court reversed an award of benefits made under Wyo. Stat. Ann. § 27–14–403(e) (Michie 1997) to the survivors of a woman who was killed in a car accident while driving home from a doctor's appointment necessitated by a work injury. This Court held the woman's death was not compensable because it did not "arise out of her employment" in the sense required by Wyoming's worker's compensation statutes. That is, a causal connection did not exist between the woman's death in the car accident and the conditions under which her work was required to be performed. In order to be compensable under § 27–14–403(e), the *Bruhn* court said, the initial injury must have been the direct cause of the employee's death. Because the car accident, and not the initial injury, caused the death, the Court held the death was not compensable.

[¶ 16] Upon first reading, *Bruhn* would seem to govern Ms. Alvarez's claim. A careful review of the case, however, reveals important differences. The most important difference for purposes of this discussion is that there was no suggestion in *Bruhn* that the initial work injury, by its nature, directly caused or somehow contributed to the car accident or the employee's death. The employee had injured her back at work and no claim was made that her back injury contributed to or predisposed her to losing control of her car on the ice and being killed when she was ejected and the car rolled over her. The *only* factor linking the work injury and the death was that the employee was traveling from a doctor's appointment for treatment of the work injury when she lost control of her vehicle and was killed.

[¶ 17] In contrast, in Ms. Alvarez's case the fact that she fell as she was leaving a physical therapy appointment for treatment of her work injury was not the only factor linking the work injury and the subsequent injury for which she sought benefits. Ms. Alvarez initially tore the supraspinatus tendon of her left rotator cuff at work when she was attempting to assist a patient. Surgery was performed to repair the torn tendon. Two months later, with her arm still in a sling, Ms. Alvarez fell twice, the first time as she was leaving her physical therapy appointment, and tore the same tendon that had been previously repaired. Another surgery was performed to repair the second tear. Ms. Alvarez's doctor testified that the re-tear was related to the original work injury. Thus, unlike the situation in *Bruhn* where the only factor linking the death and the work injury was that the death occurred when the employee was traveling from a doctor's appointment necessitated by the work injury, Ms. Alvarez presented medical testimony from which she could argue a direct causal connection between the original tear and the re-tear, i.e. her rotator cuff would not have been torn and required a second surgery after she fell if she had not previously torn it at work predisposing her to a re-tear.

[¶ 18] Given this distinction, *Bruhn* does not control the outcome of Ms. Alvarez's case. Instead, the outcome is controlled by our cases involving the second compensable injury rule. The second compensable injury rule applies when an initial compensable injury ripens into a condition requiring additional medical intervention. *Yenne–Tully v. Workers' Safety & Comp. Div.,* 12 P.3d 170, 172 (Wyo.2000). Under the rule, a subsequent injury is compensable if it is causally related to the initial compensable work injury. *Id.*

[¶ 19] A review of the cases in which we have applied the second compensable injury rule is instructive. In *Casper Oil Co. v. Evenson,* 888 P.2d 221 (Wyo.1995), an employee injured his back at work in 1989 resulting in surgery three months later. The Division awarded him benefits for that injury. Approximately nine months after the work injury, and after the initial surgery, the

employee slipped and fell at home. He reported the fall to his doctor, stating that it had aggravated his work injury. There was no contention the fall was work related. Three years later, when his back problems persisted, his doctor performed a spinal fusion. The employee filed a report of injury and, after a contested case hearing, the Office of Administrative Hearings (OAH) awarded him benefits for the subsequent back injury. The employer appealed, claiming there was insufficient evidence to support the hearing examiner's determination that the 1993 spinal fusion was related to the 1989 work injury. We affirmed the award of benefits on the basis that the spinal fusion was a second compensable injury causally related to the work injury.

[¶ 20] We reached the same result in *Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 996 P.2d 679 (Wyo.2000), where the employee injured his back at work and received benefits as a result. Over a year and a half later, he coughed as he was getting out of the shower, heard a pop and experienced pain. His doctor diagnosed a herniated disc. The employee applied for benefits and the Division denied his claim. The hearing examiner concluded:

6. Pino has failed to meet his burden. The evidence does establish that in 1995 Pino suffered a work-related injury which may have resulted in a disc bulge. From 1995 through May 1997, Pino worked but had periodic flare-ups of his low back pain radiating into his legs. He sought medical treatment and these treatments were paid for by the Division. In May 1997, while at home, Pino coughed, felt a pop, and experienced immediate pain in his low back. An MRI in 1997 revealed a herniated disc. It is the opinion of the doctors that the work injury in 1995 weakened Pino's disc and predisposed him to a disc herniation. There is no question that the cough in 1997 caused the disc herniation and caused Pino's current back condition.

7. The medical evidence establishes that the injury in 1995 predisposed Pino to the possibility of a disc herniation. However, doing mundane things at home such as lifting, bending, twisting or coughing

can cause a herniated disc. In this case, Pino was at home when he coughed. Pino has failed to establish that his herniated disc was caused by an injury received at work.

*Id.* at 682. This Court reversed, holding the second compensable injury rule applied and the employee had met his burden of proving the herniated disc was causally related to the work injury. The Court said:

The thrust of the hearing examiner's disposition is clear; he ruled that the cause of the herniation was a cough that occurred at home not the work place. Yet, there is nothing in the second compensable injury rule that attributes any significance to the place where the worker happened to be when the injury manifested itself nor is any triggering event required. Other cases simply report the increasing severity of the injury over time that ultimately required surgery. In *Evenson,* the triggering event was a slip and fall at home.

*Id.* at 685.

[¶ 21] In two more recent cases, we reversed and remanded benefit denials because the hearing examiner did not consider the facts in light of the second compensable injury rule. *Carabajal v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2005 WY 119, 119 P.3d 947 (2005); *Yenne–Tully,* 12 P.3d at 170. In *Yenne–Tully,* the employee suffered a work related back injury for which he received medical treatment and worker's compensation benefits. A subsequent CT scan revealed a bulging disc at L3–L4 and "some significant irregularity, primarily at the L5–S1, more minor at the L4–L5 level." *Id.* at 171. Eight years later, he awoke one morning unable to move because of extreme pain. An MRI revealed a herniated disc at L4–L5. After surgery was performed to repair the disc, the employee sought benefits. The OAH denied the claim for benefits. Finding that the second compensable injury rule applied but had not been considered by the OAH, we reversed and remanded the case to the OAH for application of the rule. On remand, the OAH concluded the employee failed to meet his burden of proving a second compensable injury because the only medical opinion presented concluded his inju-

ry was primarily attributable to non-work-related causes. We affirmed. *Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 90, 48 P.3d 1057 (2002).

[¶ 22] In *Carabajal*, the claimant injured his back at work, underwent surgery for a herniated disc at L5–S1 and received worker's compensation benefits for over two years. *Carabajal*, ¶ 3, 119 P.3d at 949. He returned to work and had no further complaints until twenty-five years later, when he experienced back pain as he was walking. He was not at work at the time or engaged in any work-related activity. He sought medical treatment and an MRI revealed scar tissue and a herniated disc at the same level as before. He underwent a microdiscectomy and, when problems persisted, a spinal fusion. His claim for benefits was denied and he requested a hearing. The hearing officer denied his claim on the ground that he failed to prove he sustained a work related injury. *Id.*, ¶ 7, 119 P.3d at 950. As in *Yenne–Tully*, we reversed and remanded the case for the OAH to apply the second compensable injury rule. *Id.*, ¶ 24, 119 P.3d at 955.

[¶ 23] In contrast to these cases, in *Walsh v. Holly Sugar Corp.*, 931 P.2d 241 (Wyo.1997), we upheld a denial of benefits to an employee who sought to establish that he had suffered a second compensable injury. In *Walsh*, the employee suffered a back injury while employed by Holly Sugar and received worker's compensation benefits. Four years later, after he had left his employment with Holly Sugar, he sought benefits for back pain he experienced while working at his farm baling hay. The Division denied benefits, the OAH ruled the denial was proper and the district court affirmed. We also affirmed, concluding the doctor's testimony could be summarized as saying "the current problem could be causally related to the 1989 injury and that it could just as well not be related to the 1989 injury." Additionally, on cross-examination the doctor testified he was speculating that the current problem was related to the 1989 work injury. We held that the hearing examiner correctly determined the claimant failed to establish by a preponderance of the evidence that his 1993 symptoms were causally related to his 1989 work injury.

[¶ 24] With these cases and the second compensable injury rule in mind, we turn to consideration of the evidence Ms. Alvarez presented. She testified that on June 22, 2003, she hurt her left arm while trying to assist a patient at work. She received medical treatment and ultimately had surgery. Approximately two months after the surgery, she fell a couple of times, once on the ice in the parking lot as she was leaving her physical therapist's office after receiving treatment for her work injury and again the same week at home as she was walking through her living room. In the fall on the ice in the parking lot, she fell directly on her left shoulder, causing her to cry with pain. In the fall at home, she hit the fireplace with her right side and hip but did not strike her left shoulder. After the falls, she had increased pain in her left shoulder and made an appointment with her doctor to let him know what had happened.

[¶ 25] Dr. Ludwig Kroner, the orthopedic surgeon who treated Ms. Alvarez, testified that she continued to have pain and stiffness after the first surgery and did not progress as he would have expected. At her November 13, 2003, appointment, however, she seemed to be "over the hump," her passive motion was full and they planned to begin more aggressive physical therapy. The next time he saw her, on December 2, 2003, Ms. Alvarez reported having fallen, complained of stiffness in her left shoulder and experienced pain on examination. On January 13, 2004, Dr. Kroner ordered an arthrogram MRI of her left rotator cuff, which showed a re-tear at what appeared to be the same place as the previous tear. He performed surgery to repair the re-tear. Based upon his observations during the surgery, he testified that she had re-torn her supraspinatus tendon in what appeared to be the same spot. Dr. Kroner testified that he suspected the re-tear was caused by the fall "with the most energy" although there was a possibility that overaggressive physical therapy in October could have resulted in the re-tear. Dr. Kroner also testified that in his opinion the second sur-

gery to repair the re-tear was related to the initial work injury.

[¶ 26] From our review of the record, we agree with the Medical Commission's conclusion that Ms. Alvarez met her burden of proving the re-tear and resulting surgery were compensable; however, we reach that conclusion not on the basis of *Bruhn* but by applying the second compensable injury rule. There was no dispute that the initial rotator cuff tear was work-related and required surgical intervention. While she was still recovering from that surgery, Ms. Alvarez fell. Her doctor recorded in his notes that he suspected the re-tear occurred when she fell. He further testified that in his opinion the re-tear was related to the initial work related tear.

■ [¶ 27] As we have said, there is nothing in the second compensable injury rule that attributes any significance to where the worker was at the time the injury manifested itself nor is any triggering event required. In *Evenson,* the triggering event was a fall at home. In *Pino,* the triggering event was a cough as the employee stepped out of the shower at home. Here, the triggering event was a fall on the ice in a parking lot. What matters is not where the employee was or the nature of the triggering event, but whether the initial compensable injury ripened into a condition requiring additional medical intervention and whether the subsequent injury was causally related to the initial compensable injury. *Yenne–Tully,* 12 P.3d at 172. Dr. Kroner's testimony was undisputed that the re-tear and repair were a continuum in treatment of and related to the initial work injury. The Division presented no evidence to the contrary. Given the undisputed medical testimony, the district court's conclusions that "the record is devoid of any evidence causally linking the first compensable work injury to the injury sustained by [Ms. Alvarez] in the parking lot of her physical therapist" and further that "there is no testimony establishing the first compensable injury as a cause of the re-tear" were incorrect. We hold that Ms. Alvarez met her burden of proving the re-tear was a compensable consequence of her initial work injury and the Medical Commission's decision was supported by the second compensable injury rule.

■ [¶ 28] In reaching this result, we are cognizant of the fact that Ms. Alvarez did not expressly argue the second compensable injury rule in support of her claim for benefits but relied instead on the *Bruhn* premises rule. The Medical Commission, however, was alerted to the theory as evidenced by its discussion of the rule in its conclusions of law. Therefore, we are not foreclosed from considering this issue on appeal. *Carabajal,* ¶ 21, 119 P.3d at 954.

[¶ 29] The district court's order is reversed and the case is remanded for entry of an order affirming the Medical Commission's order on the basis of the second compensable injury rule.

GOLDEN, Justice, dissenting, in which VOIGT, Chief Justice, joins.

[¶ 30] I respectfully dissent. The Wyoming Workers' Safety and Compensation Division (the Division) denied Maria Alvarez's claim for benefits. Upon Alvarez's request for a hearing, the Division referred the matter to the Medical Commission, which awarded benefits including medical and temporary total disability (TTD). On review, the district court reversed the Medical Commission's decision on substantive grounds. Alvarez now appeals the district court's decision denying her worker's compensation benefits. I would hold that the Medical Commission lacked subject matter jurisdiction to decide Alvarez's case because it was not a "medically contested case" as required by Wyo. Stat. Ann. § 27–14–616(b)(iv) (LexisNexis 2007). The order of the Medical Commission is therefore void. Accordingly, I would dismiss this appeal.

[¶ 31] I am mindful that neither party has raised the issue of jurisdiction. Jurisdiction, however, can never be waived and this Court can, and indeed has an obligation to, confirm it has jurisdiction over an appeal. *Birkle v. Wyoming Workers' Safety and Compensation Div.,* 2007 WY 9, ¶ 2, 150 P.3d 187, 189 (2007); *Granite Springs Retreat Ass'n v. Manning,* 2006 WY 60, ¶ 5, 133 P.3d 1005, 1009–10 (Wyo.2006).

[¶ 32] The basic facts of this case are not in dispute. Alvarez suffered a torn left rotator cuff as a result of a work-related incident. The Division determined that the injury was compensable and paid benefits. Alvarez successfully underwent surgery and was progressing well with her rehabilitation. Although Alvarez was unable to work because of the injury, her treating physician anticipated that she would be able to return to work. A few months before her projected date of return, Alvarez fell on two separate occasions—once when she was leaving her physical therapist's office and once at home. The ultimate result was a re-tear of the rotator cuff, although it is uncertain which fall actually caused the damage. Alvarez was required to undergo a second surgery to repair the re-tear and her return to work was consequently delayed.

[¶ 33] The Division determined that it would not provide benefits associated with the re-tear of the rotator cuff, maintaining that under current Wyoming law the re-tear should be categorized as a new injury not related to the original work injury. Alvarez objected to the Division's determination. In her request for a hearing and in her Disclosure Statement, Alvarez claimed that she was entitled to benefits because the re-tear was a "compensable consequence" of the original work injury. At the hearing before the Medical Commission, Alvarez advanced multiple legal theories as to why the injury should be compensable. There was no dispute regarding Alvarez's medical diagnosis or medical eligibility for TTD benefits. The solitary medical testimony was from Ms. Alvarez's treating physician that Ms. Alvarez suffered a re-tear of a prior covered injury. The case consisted of a factual question of where the new injury occurred. The issue presented to the Medical Commission was whether, under Wyoming law, benefits for Alvarez's re-tear of her rotator cuff were available. As the Division attorney stated in his closing argument, "This is a legal case."

[¶ 34] My review of the record confirms that this case required no medical expertise for its resolution. The primary issue in this case involved the legal issue of coverage. As we have stated on several occasions, the Medical Commission has no legal authority to decide issues of law. *Birkle*, ¶ 5, 150 P.3d at 189–90; *Jacobs v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 104, ¶¶ 10, 12, 118 P.3d 441, 444–45 (2005); *French v. Amax Coal West*, 960 P.2d 1023, 1028–30 (Wyo.1998). The Medical Commission should have dismissed the case and returned it to the Division. *Jacobs*, ¶ 10, 118 P.3d at 444–45; *French*, 960 P.2d at 1030.

[¶ 35] Once again, because of the inattentiveness of all participants in the proceedings below, the Medical Commission conducted proceedings which exceeded its statutory authority. If every worker's compensation case, simply because medical records are involved, is construed to be a medically contested case, which surely cannot be the Legislature's intention, the Office of Administrative Hearings might as well close its doors. Having no subject matter jurisdiction, the Medical Commission's actions are void and this Court should dismiss this appeal for lack of jurisdiction. *See McIntosh*, 2007 WY 108, 162 P.3d 483 (2007) (Golden, J., dissenting); *Birkle*, ¶ 8, 150 P.3d at 190; *French*, 960 P.2d at 1030.