2012 WY 164

**In the Matter of the Worker's Compensation Claim of Randy W. HOFFMAN, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. S–12–0092.

Supreme Court of Wyoming.

Dec. 21, 2012.

Representing Appellant: Peter J. Timbers of Schwartz, Bon, Walker, Studer, LLC, Casper, Wyoming.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., HILL, VOIGT, BURKE, JJ., and GOLDEN, J., Retired.

KITE, Chief Justice.

Randy W. Hoffman injured his back while working in 1994. As a result, he had

three back surgeries between 1995 and 2004. The Wyoming Worker's Compensation Division (the Division) paid him benefits for the injury and associated treatment. In 2009, he fell on the ice at his home and underwent a fourth back surgery. Claiming that the surgery was connected to his original work injury, Mr. Hoffman sought benefits. The Division denied his claim. After a hearing, the Medical Commission (the Commission) upheld the denial, concluding that Mr. Hoffman had failed to prove the 2009 surgery was causally connected to his 1994 work injury. Mr. Hoffman filed a petition for review in district court, which affirmed the denial. In his appeal to this Court, Mr. Hoffman asserts the Commission's decision is arbitrary, capricious and not in accordance with the law because the evidence overwhelmingly showed the fourth surgery was causally connected to his work injury. We conclude that when the proper legal standard is applied, the Commission's determination was contrary to the overwhelming weight of the evidence. We, therefore, reverse.

## ISSUE

■ Mr. Hoffman presents the following issue for this Court's determination:

1. Whether the order denying benefits for Mr. Hoffman's Second Fusion was arbitrary, capricious, and not in accordance with law.

The Division asserts substantial evidence supported the Commission's decision.

## FACTS

■ In October of 1994, while working on a drilling rig for Dunbar Well Service near Gillette, Wyoming, Mr. Hoffman fell from the rig floor to the ground three feet below, injuring his back. After treating the injury conservatively for several months, Mr. Hoffman's physician performed a surgical hemilaminectomy with partial discectomy at the L5–S1 level in 1995.

■ Six years later, in 2001, after Mr. Hoffman began experiencing pain in his lower back and leg, an orthopedic spine surgeon repeated the surgery performed in 1995. Between 2002 and 2004, Mr. Hoffman again

experienced lower back pain. He was referred to Dr. Thomas A. Kopitnik, a neurosurgeon, who ultimately performed a third surgery, fusing L4–5 and L5–S1. Mr. Hoffman received worker's compensation benefits for his treatment from the date of his injury through the 2004 surgery.

■ In April of 2009, Mr. Hoffman slipped and fell on ice at his home. After suffering from back pain for several weeks, he again saw Dr. Kopitnik, who recommended another surgery to fuse the two levels above the site of the 2004 surgery. Dr. Kopitnik sought preauthorization for the surgery from the Division, stating that Mr. Hoffman's fall on the ice exacerbated the underlying condition created by his work injury. The Division retained Dr. Paul C. Williams, a neurosurgeon, to perform an independent medical evaluation (IME). Dr. Williams concluded Mr. Hoffman's back issues were less influenced by his work injury than degenerative changes resulting from natural aging. After receiving Dr. Williams' report, the Division issued a final determination denying preauthorization for the second fusion surgery. Mr. Hoffman objected to the determination and requested a contested case hearing.

[¶ 6] Prior to the hearing, Dr. Kopitnik performed the second fusion surgery. Consequently, the issue for determination at the hearing was not whether the Division properly denied preauthorization for the surgery but whether the surgery was covered by worker's compensation. After the hearing, the Commission denied benefits, concluding that Mr. Hoffman failed to meet his burden of proving the 2009 fusion was causally connected to his 1994 work injury. In reaching that conclusion, the Commission found:

— "Mr. Hoffman's present spinal problems are *primarily* caused by the nonindustrial fall superimposed on a degenerating back ...";

— "[his] need for surgery on the L2–3 and L3–4 segments ... is not *primarily* due to adjacent segment deterioration as indicated by Dr. Kopitnik";

— "the non-work-related fall in 2009 was the *primary* contributing incident for Mr. Hoffman's need for an additional

surgery and fusion, coupled with his profound degenerative profile."

In its conclusions of law, the Commission stated:

> Mr. Hoffman had received an excellent result from the 2004 fusion, and all medical expenses were paid by the Division as part of his original 1994 injury. To hold the Employer responsible for care and treatment 15 years later, when a non-industrial intervening cause created the need for the latest surgery seems inherently unfair, particularly in light of Mr. Hoffman's genetic predisposition for spinal pathology.

The district court affirmed the Commission's ruling. Mr. Hoffman timely appealed to this Court.

## STANDARD OF REVIEW

[¶ 7] Mr. Hoffman contends the Commission applied the wrong legal standard and, when the correct legal standard is applied, its ruling was against the overwhelming weight of the evidence. The question of whether the Commission applied the correct legal standard is one of law, which we review *de novo*. *Judd v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 85, ¶ 27, 233 P.3d 956, 967 (Wyo.2010). In reviewing the Commission's conclusion that Mr. Hoffman did not meet his burden of proof, we apply the following standards:

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably con-

clude as it did, based on all the evidence before it.

*Davenport v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 6, ¶ 12, 268 P.3d 1038, 1041–42 (Wyo.2012) (citation omitted).

## DISCUSSION

[¶ 8] Mr. Hoffman asserts that Drs. Kopitnik and Williams both testified that the 2004 surgery contributed to the need for a second fusion; therefore, the Commission's finding that the 2009 surgery was not causally connected to his 1994 work injury is contrary to the overwhelming weight of the evidence. He maintains that he was only required to prove that his work injury contributed to the 2009 surgery, not that it contributed to any particular degree, and since both experts testified that it contributed, the Commission erred in concluding he did not prove his case. The Division responds that substantial evidence supported the Commission's conclusion that Mr. Hoffman did not meet his burden of proving a causal connection between his 1994 work injury and the 2009 surgery.

[¶ 9] Mr. Hoffman's claim that he is entitled to benefits for the 2009 surgery requires application of the second compensable injury rule. "The second compensable injury rule applies when an initial compensable injury ripens into a condition requiring additional medical intervention." *Rogers v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 117, ¶ 14, 284 P.3d 815, 819 (Wyo.2012), quoting *Alvarez v. State ex rel. Wyo. Workers' Comp. Div.*, 2007 WY 126, ¶ 18, 164 P.3d 548, 552 (Wyo.2007). "Under the second compensable injury rule, a subsequent injury or condition is compensable if it is causally related to the initial compensable injury." *Id.* As with claims for benefits arising from an initial injury, an employee claiming entitlement to benefits under the second compensable injury rule has the burden of proving "a causal connection exists between a work-related injury and the injury for which worker's compensation benefits are being sought." *Davenport*, ¶ 21, 268 P.3d at 1044 (citation omitted). In order to receive benefits, therefore, Mr. Hoffman had to prove by

a preponderance of the evidence that the condition giving rise to his 2009 surgery was causally connected to his 1994 work injury. In other words, he had to prove that his initial work injury ripened into a condition requiring additional medical intervention in 2009. *Id.*, quoting *Wyo. Workers' Safety & Comp. Div. v. Kaczmarek*, 2009 WY 110, ¶ 9, 215 P.3d 277, 281 (Wyo.2009).

[¶ 10] In attempting to make that showing, Mr. Hoffman relied primarily on the medical records and deposition testimony of Dr. Kopitnik. Upon reviewing a CT scan taken after Mr. Hoffman's fall in 2009, Dr. Kopitnik noted "segmental breakdown of his previous fusion at L3–4 ... and some stenosis [1] developing at L2–3." Subsequently, in a letter to the Division, Dr. Kopitnik stated that the segmental breakdown in the area above the 2004 fusion at L2–3 and L3–4 was clearly related to the 2004 fusion which resulted from his 1994 work injury. He stated further:

> [Mr. Hoffman] has segmental breakdown from facet joint disease and mechanical failure at the level immediately adjacent to his previous fusion. This is a known possible sequela of lumbar fusion.
>
> I believe this is related to his previous work related injury and need for a previous lumbar fusion. I believe that his fall on the ice was merely exacerbating his underlying spinal degenerative condition that was proven by lumbar myelogram post myelographic CT scan. I believe this is clearly a compensable injury.

[¶ 11] In his deposition, Dr. Kopitnik reiterated that tests performed after Mr. Hoffman slipped and fell in 2009 showed that he had developed spinal stenosis and segmental breakdown at the level immediately above his 2004 surgery. Dr. Kopitnik testified that in his opinion it was probable the stenosis was related to the fusion performed in 2004. He further testified that he did not believe the fall on the ice had anything to do with the stenosis because a fall on the ice would not cause spinal stenosis, which takes many months or years to develop. Dr. Kopitnik also testified that in his opinion, rather than resulting from natural aging or the fall, the condition of Mr. Hoffman's back in 2009 more probably resulted from accelerated aging due to mechanical failure adjacent to the 2004 surgery and was, therefore, related to his 1994 work injury.

[¶ 12] In addition to Dr. Kopitnik's records and testimony, Mr. Hoffman points to Dr. Williams' testimony that in his opinion the 2009 fusion and the 1994 work injury "may be related" and that the 2004 fusion necessitated by the 1994 work injury "contributed" to the condition which led to the fusion in 2009. Although Dr. Williams testified he thought several other more important factors contributed to Mr. Hoffman's back problems in 2009, Mr. Hoffman points out that Dr. Williams agreed "it would be remiss" not to include the 2004 fusion as one factor that contributed to Mr. Hoffman's condition.

[¶ 13] Considering the testimony of Drs. Kopitnik and Williams, it is clear that considerable evidence was presented showing the 2009 surgery was causally connected to the 1994 work injury. In the language of the second compensable injury rule, evidence was presented from two expert witnesses that the initial 1994 compensable injury ripened into a condition requiring additional medical intervention in 2009. In rejecting Mr. Hoffman's claim based on its findings that the 1994 work injury was not the primary cause of the condition giving rise to the 2009 surgery, the Commission misapplied Wyoming law. Mr. Hoffman was not required to prove his work injury was the primary cause; he was only required to prove the 1994 work injury and the need for additional medical treatment in 2009 were causally connected. *Davenport*, ¶ 22, 268 P.3d at 1044. Applying the proper standard, the question is whether substantial evidence supported the Commission's decision to reject Mr. Hoffman's evidence. In making that determination, we consider whether the Commission's decision was contrary to the overwhelming weight of the evidence in the record as a whole.

[¶ 14] In addition to its misapplication of Wyoming law, which we have already dis-

1. Stenosis is a narrowing of the spinal canal.

cussed, the Commission's decision to reject Mr. Hoffman's evidence appears to have been based primarily on three factors: its conclusion that other evidence was entitled to greater weight than Mr. Hoffman's evidence; its conclusion that Dr. Kopitnik was not a credible witness; and its conclusion that it would not be fair to hold the employer liable for the 2009 surgery. Although these conclusions are closely intertwined, we address each of them separately.

[¶ 15] In rejecting the expert medical opinions, the Commission found persuasive radiology records from 2007 showing that Mr. Hoffman had degenerative facet and disc disease. Those records, combined with evidence showing that Mr. Hoffman had good results from, and went back to work after, the 2004 surgery and received no further medical care for his back until after he fell in 2009, persuaded the Commission that the 2009 surgery was caused by the fall and the degenerating condition of Mr. Hoffman's back.

[¶ 16] The task of weighing the evidence is assigned to the Commission. *Hurley v. PDQ Transport, Inc.*, 6 P.3d 134, 138 (Wyo.2000). It was not error for the Commission to consider the 2007 radiology reports and evidence surrounding the 2004 surgery and weigh that evidence against the expert testimony. The fact that the Commission found the other evidence persuasive as tending to show the 2009 surgery was causally connected to factors other than the 1994 work surgery is not error. However, in order to conclude that those factors alone gave rise to the condition necessitating the 2009 surgery, the Commission had to reject the evidence showing that the 1994 injury and the 2009 surgery were causally connected. Specifically, the Commission had to reject the testimony of Drs. Kopitnik and Williams.

[¶ 17] In the context of cases involving an aggravation of a pre-existing condition, we have said:

the causal connection between the work and the condition is satisfied if the medical expert testifies it is more probable than not that the work contributed in a material fashion to the aggravation of the injury. Expert medical testimony to the effect that the work "contributed to" the injury or that the injury "most likely" or "probably" is the product of the workplace suffices.

*Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 11, 105 P.3d 451, 455 (Wyo.2005) (citations omitted). If we have not previously made it clear that the same standard applies in the context of a second compensable injury, we do so now. In a second compensable injury case, the causal connection between the work injury and the second injury is satisfied if the medical expert testifies that the work injury contributed to the second injury. Dr. Kopitnik stated that the condition giving rise to the 2009 surgery was "clearly related to" and "more probably resulted from" Mr. Hoffman's original work injury and resulting 2004 fusion. Dr. Williams testified that the 1994 work injury and resulting 2004 fusion contributed to the condition giving rise to the 2009 surgery and were factors that should be considered. This testimony satisfied the requirement for proving a causal connection.

[¶ 18] The Commission rejected Dr. Kopitnik's opinions on the basis that he "had a financial stake in the outcome," and had conceded that some of his opinions regarding adjacent segment disease were "theoretical." No evidence was presented that Dr. Kopitnik had a financial stake in the outcome; therefore, that conclusion is not supported by the record and the Commission erred in relying on it as a basis for rejecting Dr. Kopitnik's opinions.[2] *Camilleri v. State*

2. Evidence was presented that Dr. Kopitnik sought preauthorization from the Division for the 2009 surgery, the Division did not give the authorization and Dr. Kopitnik performed the surgery anyway. This evidence might support an inference that Dr. Kopitnik was not paid, which inference would support the Commission's finding that he had a financial stake in the outcome. It is equally possible, however, that Dr. Kopitnik received payment from another source in which case the evidence would not support the inference or the Commission's finding. The same could be said if the Commission were inclined in these cases to reject the Division's expert medical testimony based upon an inference that he or she was testifying against the claimant because the Division was paying the bill for the medical opinion. This illustrates the problem that arises

**304**

*ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 156, ¶ 31, 244 P.3d 52, 62 (Wyo. 2010). The Commission's statement that Dr. Kopitnik's opinions were theoretical is based on the following exchange during his deposition:

Q. What do you believe that the stenosis is a result of?

A. I don't think—I don't think that's clear, but I think that it's prob—more likely than not—and I understand the legal definition of probable and possible. I think it is probable that it is related to the need to have a fusion at the L5–S1 space to have a non-motion segment of L4, 5 and S1 and shifting mechanical stress to the one space adjacent to it, and that has accelerated degenerative disease at that level. And I believe more probable than not the need of a fusion at L4–5 and L5–S1 is the proximate cause of accelerated age at the L3–4 disk space and stenosis at the level.

Q. Could you go farther in depth with regard to the mechanical effects of the fused disks on the disks immediately adjacent?

A. Not much more than common sense. You have fused spaces that are not moving and you have an adjacent level that is moving, and it just theoretically sees increased mechanical stress and so it will wear and age theoretically faster.

Q. And that is due to the rigidity of the fused disks?

A. In some part, yes, sir. Some of this is theoretical, so it's theoretically due to the rigidity of the fusion, yes, sir.

As this excerpt reflects, the Commission's statement is supported by the record and it was entitled to weigh Dr. Kopitnik's testimony along with the other evidence presented. The Commission did not err in considering Dr. Kopitnik's testimony that some of his conclusions concerning adjacent segment disease were theoretical.

■ [¶ 19] Notwithstanding Dr. Kopitnik's testimony concerning adjacent segment

when a fact finder makes a finding based upon an inference when no evidence is presented on

disease, however, the Commission still had before it Dr. Williams' testimony that the original work injury and resulting surgery contributed to the need for the 2009 surgery. The Commission addressed that testimony by stating, "Ultimately Dr. Williams agreed that the 2004 fusion may have *some* level of contribution for the need for the subsequent fusion extension, but he attributes far more contribution to the degenerative component . . . ." (emphasis in original). We considered a similar statement by the Commission in *Judd*, ¶ 23, 233 P.3d at 966. There, the Commission concluded that the "contribution of the significant preexisting condition to the total knee replacement was far more considerable than the relatively minor fall that occurred on that date." Concluding that this was "a clear statement of apportionment [which] is not permitted by Wyoming statute," we held the Commission erred in comparing the relative contributions of the work injury and the pre-existing condition as a basis for denying benefits. *Id.*, ¶ 40, 233 P.3d at 971.

[¶ 20] In *Judd*, we cited *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Faulkner*, 2007 WY 31, ¶ 18, 152 P.3d 394, 399–400 (Wyo.2007) where we expressly rejected arguments by the Division and the employer that apportionment is required under Wyoming's worker's compensation statutes. We considered statutory language from other states where apportionment is allowed and concluded no similar statutory language exists in Wyoming. *Id.*, ¶ 18, 152 P.3d at 399–400. Because the Wyoming legislature had not enacted a statute requiring apportionment, we applied the general rule disallowing apportionment in the absence of a specific statute requiring apportionment. *Id.* Since *Faulkner*, the legislature has not acted to require apportionment and we continue to apply the general rule disallowing apportionment in the absence of statutory language directing otherwise.

[¶ 21] As in *Judd*, the Commission erred in comparing the relative contributions of the degenerative component with the work injury

the issue.

and resulting fusion as a basis for denying compensation. The fact that Dr. Williams opined that the degenerative component played a greater role in the condition bringing about the 2009 surgery simply is not a proper basis for disregarding his testimony that the 1994 work injury and resulting fusion contributed to Mr. Hoffman's need for another surgery in 2009. Correctly applying Wyoming law, Dr. Williams' testimony supported awarding Mr. Hoffman benefits for the 2009 surgery.

[¶ 22] As an additional reason for disregarding Mr. Hoffman's evidence, the Commission concluded it would not be fair to hold Mr. Hoffman's employer responsible for the 2009 surgery. Wyo. Stat. Ann. § 27-14-616(b)(iv) (LexisNexis 2011), the provision establishing the Medical Commission, states in pertinent part:

> When hearing a medically contested case, the [Commission] shall serve as the hearing examiner and shall have exclusive jurisdiction to make the final administrative determination of *the validity and amount of compensation payable* under this act.

(emphasis added). Thus, the legislature has charged the Commission with determining the validity of a medically contested claim and the amount of compensation payable. In carrying out that charge, the Commission is obligated to apply the law to the facts. The Commission's perception of what is or is not "fair" is not an appropriate consideration. The Commission erred in considering it.

[¶ 23] We have said the role of the Medical Commission is to resolve medically contested issues through the professional expertise of health care providers. *Hurley*, 6 P.3d at 138. The task of determining the credibility of witnesses and weighing the evidence is assigned to the Commission and its determination will be overturned only if it is clearly contrary to the great weight of the evidence. In Mr. Hoffman's case, the Commission's efforts to determine the validity of his claim were undermined by a misunderstanding of the applicable legal standard. Under Wyoming law, Mr. Hoffman was required to prove that the 2009 surgery was causally connected to his 1994 work injury. His treating physician and the Division's

medical expert testified that it was. In rejecting that testimony, the Commission improperly considered Dr. Kopitnik's "financial stake" in the outcome, a factor for which there was no evidentiary support, and its own perceptions of what was fair. Taking those considerations out of the mix and applying the correct legal standard, we conclude the decision to reject Mr. Hoffman's evidence was contrary to the overwhelming weight of the evidence.

[¶ 24] Reversed and remanded for proceedings in accordance with this decision.

HILL, J., files a specially concurring opinion.

HILL, Justice, specially concurring.

[¶ 25] I concur wholly in the result reached by the majority opinion. I write separately because I prefer that this Court reject altogether the suggestion that a treating physician's testimony may be ignored because of the physician's alleged financial stake in being compensated for treating the worker's compensation claimant. In *Watkins v. State ex rel. Wyo. Med. Comm.*, 2011 WY 49, 250 P.3d 1082 (Wyo.2011), I commented on the speculative nature of such credibility determinations:

> The Medical Commission also found all of Watkins' physicians not to be credible on the basis that they had a financial interest in treating Watkins. My sense is just the opposite; the only physician (compensated expert witness only, no treatment goal) with what amounted to a financial stake in this case was the physician who produced an IME that was tailored to the Division's needs.

*Watkins*, ¶ 30, 250 P.3d at 1092 (Hill, J., dissenting).

[¶ 26] In *Moss v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2010 WY 66, 232 P.3d 1 (Wyo.2010), this Court rejected a credibility finding based on the claimant's financial stake in the outcome of his claim, explaining:

> The Medical Commission's further observations that Mr. Moss's credibility was impacted because he "seemed angry" and

"has a financial stake in the outcome" are of little significance. Every claimant has a financial stake in the outcome of his or her worker's compensation benefits claim and it is likely that more than a few are angry about their situation. These observations do not support the Medical Commission's conclusion that Mr. Moss was not credible.

*Moss,* ¶ 30, 232 P.3d at 9.

[¶ 27] In the present case, the Court found no evidence in the record that Dr. Kopitnik had not been paid for the surgery he performed on Hoffman, and the Court thus rejected the Medical Commission's finding that Dr. Kopitnik's testimony was not credible because of his financial stake in the outcome. I agree with the majority's rejection of the Commission's credibility finding, but I would reach that result by extending the approach this Court took in *Moss.* I would hold that a treating physician's payment or lack thereof for treatment of the claimant is not the type of financial stake in the claim's outcome that may be used to support a negative credibility finding. It is no doubt true that the treating physician would like to be compensated for his services, just as a claimant would like to receive benefits, but it is my sense that the link between those desires and the testimony's credibility will always be speculative and tenuous and should be rejected.