2002 WY 90

**In the Matter of the Worker's Compensation Claim of Brett C. YENNE–TULLY, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. 01–134.

Supreme Court of Wyoming.

June 18, 2002.

Donald L. Painter, Casper, Wyoming, Representing Appellant.

Hoke MacMillan, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Cheyenne, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, and VOIGT, JJ., and BRACKLEY, D.J.

VOIGT, Justice.

[¶ 1] This is an appeal from an Order Denying Benefits Nunc Pro Tunc issued by a hearing examiner from the Office of Administrative Hearings (OAH) on April 27, 2001. Brett Yenne–Tully (the appellant) contended that the herniated disc he suffered in 1997 was a second compensable injury resulting from a work-related accident in 1989. The Wyoming Workers' Safety and Compensation Division (the Division) disagreed. The hearing examiner concluded that the medical evidence indicated that the appellant's original injury was not the predominant cause of his subsequent disc herniation and he failed to prove that he was entitled to benefits under the second compensable injury rule. We affirm.

## ISSUES

[¶ 2] The appellant phrases the issue as:

Whether, when the expert opinion apportions the causation for injury as 70 percent as non-occupational causes and thirty percent to the subject injury, Appellant has failed as a matter of law to meet his burden of proof.

The Division states the issue as:

Whether the Hearing Examiner correctly determined that Appellant's herniated disc in 1997 was not a second compensable injury resulting from his 1989 work-related accident.

## FACTS

[¶ 3] On September 29, 2000, this Court reversed and remanded this case to the OAH for reconsideration under the second com- pensable injury rule. *Yenne–Tully v. Workers' Safety and Compensation Div., Dept. of Employment,* 12 P.3d 170 (Wyo.2000). In that opinion, we cited the facts as:

Yenne–Tully suffered his first back injury when a snow fence fell on him in 1982. He received treatment and missed two or three days of work. He had no further back problems until August 1989, when he fell down a flight of stairs while working as a guard at the Wyoming State Penitentiary. CT scans the following summer revealed a disc bulge at the L3–L4 level, as well as "some significant irregularity, primarily at the L5–S1, more minor at the L4–L5 level." An MRI in December 1991 showed "early degenerative changes of the intervertebral dis[c] at the L5–S1 level, without herniation." The Division paid for Yenne–Tully's conservative treatment for his back through December 1991. Yenne–Tully continued to lead an active life, but experienced constant back pain and had to leave work early or miss work on many occasions. In December 1997, he awoke one morning and could not move due to extreme pain. An MRI the following month revealed a herniated disc at the L4–L5 level. The disc was surgically repaired in January 1998.

Yenne–Tully sought workers' compensation benefits for his surgery, believing the herniated disc to be causally related to his 1989 fall. The Division denied benefits, stating that, "[t]he current condition is due to a herniation at the L4–L5 level, which was not effected in the original injury." A hearing was held at Yenne–Tully's request on September 23, 1998. Four of his co-workers testified that since the 1989 accident, Yenne–Tully complained of, and exhibited symptoms of, back pain. Exhibits included the report and deposition of a physician appointed by the Division to examine Yenne–Tully and review his medical records.

*Id.* at 171.

[¶ 4] In the second proceeding, the hearing examiner relied on the following stipulated facts, which we quote from the record:

1. Claimant is 38 years old and has been employed as a correctional officer by the Wyoming State Penitentiary since 1986.

2. In August 1989, Claimant sustained an injury to his low back while at work when he fell down a flight of stairs.

3. A CT scan taken in June 1990 revealed disc bulging at the L3–L4 level.

4. A second CT scan taken in July 1990 showed "some significant irregularity, primarily at the L5–S1, more minor at the L4–L5 level.["]

5. An MRI taken in December 1991 revealed "early degenerative changes of the intervertebral disc at the L5–S1 level, without herniation."

6. Claimant treated conservatively for the two years following his injury.

7. The injury was recognized by Respondent as work related and all medical benefits for services rendered from the date of injury to the date of last treatment in December 1991 were paid in accordance with the Workers' Compensation Law.

8. Claimant has credibly testified that, although he led a very active life since the date of injury, he has been suffering from various degrees of pain in his low back since the injury occurred in August 1989 to his low back.

9. In the years since his last medical treatment in December 1991, he has had to leave work early or take entire days off on numerous occasions because of low back pain.

10. Four of Employee–Claimant's co-workers at the Wyoming State Penitentiary testified that, since his 1989 work-related injury to his low back, Employee–Claimant walks with a [limp] or rolling gait, exhibits pain behavior in the lower back when he bends or rises from a sitting position, uses hands or arms to brace himself when sitting or rising and cannot perform any heavy or aggressive duties, such as restraining inmates.

11. Finally, in December 1997, he awoke in the morning to his alarm clock and could not move to turn if off because of excruciating pain in his low back.

12. An MRI taken in January 1998 revealed a herniated disc at the L4–L5 level.

13. Claimant underwent surgery in January 1998 which successfully repaired the herniation at the L4–L5 level.

14. The only medical opinion on the subject of the causation or inter-relation between the original August 1989 low back injury and the incident of December 1997, when Employee–Claimant could not move to turn off his alarm clock, is submitted in the deposition testimony of Dr. Nielson, which is incorporated in its entirety by this reference.

The hearing examiner further found:

15. Since his 1989 work injury, Yenne–Tully led an extremely active life outside work including being dragged by a horse which resulted in a finger amputation.

16. Dr. Nielson testified that a 1991 MRI of the lumbar spine was essentially normal at the L4–L5 level. In 1997 an MRI of the lumbar spine revealed significant abnormalities including a large herniated disc at the L4–L5 level. . . .

17. Dr. Nielson opined that only 30 percent of the causation of Yenne–Tully's 1997 L4–L5 level herniated disc was the result of the original 1989 work injury. Dr. Nielson apportioned 70 percent to be related to cumulative trauma, including his activity with horses. . . .

18. Because 70 percent of the problem was apportioned to non work-related activities, Yenne–Tully failed to prove by a preponderance of the evidence that his herniated disc at the L4–L5 level was the direct result of his 1989 work injury to his lumbar spine at the L3–L4 level.

[¶ 5] The Division retained a neurosurgeon, Dr. Karl Nielson, who performed an Independent Medical Examination of the appellant on March 3, 1998. Dr. Nielson issued a report at that time and gave deposition testimony on September 1, 1998. He testified that an MRI in 1991 showed that the appellant's spine was essentially normal at the L4–L5 level, only showing minor disc bulges. He further testified that the herniated disc discovered in 1997 could, in small

part, be related to the original injury in 1989, but the primary reason for herniation was attributable to cumulative trauma, some resulting from work, some from avocation, and some from daily living.

[¶ 6] This matter came before the OAH on March 27, 2001, and the hearing examiner denied benefits for a second time. The appellant petitioned the district court on May 17, 2001, for review of the OAH's order. The district court certified review to this Court pursuant to W.R.A.P. 12.09(b) on July 2, 2001.

## STANDARD OF REVIEW

[¶ 7] When the district court certifies directly to this Court an administrative agency's decision, we review that agency's decision "under the same appellate standards applicable to the reviewing court of the first instance." *Matter of Bessemer Mt.,* 856 P.2d 450, 453 (Wyo.1993), *cert. denied,* 519 U.S. 1091, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997). Our review is limited to a determination of the factors specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001). The reviewing court shall:

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>>
>> * * *
>>
>> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c)(ii).

The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are a question of law over which our review authority is plenary. *Wesaw v. Quality Maintenance,* 2001 WY 17, ¶ 8, 19 P.3d 500, ¶ 8 (Wyo. 2001). We affirm an administrative agency's conclusions of law only if they are in accord with the law. *Id.* We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Id.* In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. *Wesaw,* ¶ 9. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. *Id.* Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Id.* It is more than a scintilla of evidence. *Id.*

*In re Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, 1136 (Wyo.2001).

[¶ 8] When reviewing a hearing examiner's decision that a worker's compensation claimant has failed to meet the burden of proof, we apply the following principles:

> A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. *Martinez v. State ex rel. Wyoming Workers' Compensation Div.,* 917 P.2d 619, 621 (Wyo.1996). When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of Wyo. Stat. § 16–3–114(c)(ii) (1990). *City of Casper v. Utech,* 895 P.2d 449, 452 (Wyo.1995). On appeal the complainant ... has the burden of proving arbitrary administrative action. *Knight v. Environmental Quality Council of State of Wyo.,* 805 P.2d 268 (Wyo.1991); *Wyoming Bancorporation v. Bonham,* 527 P.2d 432, 439 (Wyo.1974); *Marathon Oil Co. v. Welch,* 379 P.2d 832, 836 (Wyo.1963); *Whitesides v. Council of City of Cheyenne,* 78 Wyo. 80, 319 P.2d 520, 526 (1957). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. *Utech,* 895 P.2d at 451 .... The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming

weight of the evidence. *Wyoming Steel & Fab, Inc. v. Robles,* 882 P.2d 873, 875 (Wyo.1994). Demonstrating evidentiary contradictions in the record does not establish the irrationality of the ruling, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it.

*Pederson v. State ex rel. Wyoming Workers' Compensation Div.,* 939 P.2d 740, 742 (Wyo. 1997); *and see Sheth v. State ex rel. Wyoming Workers' Compensation Div.,* 11 P.3d 375, 378 (Wyo.2000) *and Lunde v. State ex rel. Wyoming Workers' Compensation Div.,* 6 P.3d 1256, 1258–59 (Wyo.2000).

## DISCUSSION

[¶ 9] The appellant argues that his 1989 injury was the cause of his herniated disc, which was diagnosed in 1997. The appellant asserts that he is entitled to recover additional worker's compensation benefits because this is a second compensable injury. He argues that an injury is compensable if there is a causal connection between the injury and the condition.

[¶ 10] Under the second compensable injury rule, a worker who has received a compensable injury and received benefits for that injury can, regardless of the passage of time, receive more benefits for that compensable injury without meeting either of the time limits or increased burden of proof found in Wyo. Stat. Ann. § 27–14–605 (Lexis-Nexis 2001). *Casper Oil Co. v. Evenson,* 888 P.2d 221, 225 (Wyo.1995). In order for a second injury to be compensable, the original compensable injury must be the *direct cause* of the subsequent injury. *State ex rel. Wyoming Workers' Safety and Compensation Div. v. Bruhn,* 951 P.2d 373, 377 n. 1 (Wyo. 1997).

[¶ 11] Wyo. Stat. Ann. § 27–14–102(a)(xi) (Michie 1997) defines a compensable injury as:

[A]ny harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extra-hazardous duties incident to the business. "Injury" does not include:

\* \* \*

(G) Any injury resulting primarily from the natural aging process or from the normal activities of day-to-day living, as established by medical evidence supported by objective findings[.]

Any injury "aris[es] out of" the employment when a causal connection exists between the injury and the conditions under which the work is required to be performed. *Bruhn,* 951 P.2d at 376–77. An injury is not compensable if it cannot fairly be traced to the employment as a contributing cause. *Id.* at 377. In the instant case, a significant causal connection does not exist between the appellant's initial injury in 1989 and discovery of the herniated disc in 1997. According to the medical evidence, the appellant's original injury was not the predominant cause of subsequent disc herniation at the L4–L5 level. This resulted primarily from cumulative trauma occurring outside the workplace.

[¶ 12] The appellant concedes that Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) makes an exception for normal aging, but contends that cumulative trauma "would be anything but normal aging." Subsection (G) excludes not only injuries due primarily to normal aging, but also those due primarily to the normal activities of day-to-day living. Dr. Nielson described cumulative trauma as "just day to day life" and "the work from daily living . . . ."

[¶ 13] This Court has stated that the phrase "day-to-day living," as used in Wyo. Stat. Ann. § 27–14–102(a)(xi)(G) describes those activities that a worker's employer does not have the right to control. *State ex rel. Wyoming Workers' Safety and Compensation Div. v. Sparks,* 973 P.2d 507, 511 (Wyo.1999). Common actions such as getting out of a car or bending to pick up a pen are not considered activities of day-to-day living when performed in the course of employment. *In re Worker's Compensation*

*Claim of Keck,* 985 P.2d 430, 433 (Wyo.1999); *Sellers v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 979 P.2d 959, 960 (Wyo.1999). Recreational activities, performed outside the workplace, or household chores are beyond the control of the employer and would be characterized as day-to-day living activities. We conclude that the cumulative trauma responsible for the majority of the appellant's injury is attributable to day-to-day living, and the appellant does not have a compensable injury pursuant to Wyo. Stat. Ann. § 27–14–102(a)(xi).

[¶ 14] The hearing examiner denied the appellant benefits for his herniated disc, and we conclude that there is substantial evidence to support the hearing examiner's factual findings. We agree with the hearing examiner that the appellant failed to prove that he was entitled to benefits under the second compensable injury rule. The hearing examiner's decision is affirmed.