2009 WY 110

**In The Matter of The Worker's Compensation Claim of Roger KACZMAREK.**

**State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellant (Respondent),**

v.

**Roger Kaczmarek, Appellee (Petitioner),**

**In The Matter of The Worker's Compensation Claim of Roger Kaczmarek.**

**Cannon Oil and Gas Well Service, Inc., Appellant (Respondent),**

v.

**Roger Kaczmarek, Appellee (Claimant).**

Nos. S–08–0208, S–08–0209.

Supreme Court of Wyoming.

Sept. 3, 2009.

his back surgery in 2006. The appellee claimed that the 2006 surgery was related to injuries sustained in a 1979 work-related accident for which the appellee received workers' compensation benefits. The Division denied benefits and the matter was referred to the Office of Administrative Hearings (OAH), where the denial was affirmed. The appellee appealed to the district court and the district court reversed the denial of benefits. We will reverse the decision of the district court and affirm the Division's denial of benefits.

## ISSUES

[¶ 2] Two issues are before us in this appeal:

1. Did the hearing examiner apply the proper burden of proof when denying the appellee's request for benefits under the second compensable injury rule?

2. Was the hearing examiner's decision denying benefits to the appellee against the great weight of the evidence?

## FACTS

[¶ 3] On February 19, 1979, the appellee was injured when an oil well derrick collapsed and fell on top of him. The appellee suffered an acute nondisplaced fracture of the pelvis and a chip fracture to the superior portion of the L4 vertebrae. The appellee received workers' compensation benefits resulting from these injuries.

[¶ 4] On September 28, 1993, the appellee was lifting a tire weighing approximately 180 pounds when the tire broke loose from his truck where it was wedged, causing pain in the appellee's back. The appellee sought treatment for that injury with Dr. James Plate on October 4, 1993. An MRI, conducted on December 15, 1993, showed a bulged disc without herniation at L4/5 and a small extruded disc herniation in the right lateral recess of L5/S1. This injury occurred while the appellee was working, and he received workers' compensation benefits for this injury, but not through the Wyoming workers' compensation system, as the appellee was subject to a different system at the time.

Representing Appellant in Case No. S–08–0208: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James Michael Causey, Senior Assistant Attorney General. Argument by Mr. Causey.

Representing Appellant in Case No. S–08–0209: Clark D. Stith and Melissa J. Lyon of Rock Springs, Wyoming. Argument by Ms. Lyon.

Representing Appellee in Case Nos. S–08–0208 & S–08–0209: James R. Salisbury of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Roger Kaczmarek (the appellee) applied to the Wyoming Workers' Safety and Compensation Division (Division) for reimbursement of medical expenses relating to

[¶ 5] The appellee continued to experience back pain and in 2006, he sought additional treatment from Dr. Plate. An MRI of the appellee's back showed various problems along the lumbar region of his spine.[1] After reviewing the MRI, Dr. Plate referred the appellee to a surgery group in Ft. Collins, Colorado. Dr. Plate also advised the appellee to contact his lawyer to see if they could "get something worked out" so that the Division would pay the costs of consultation and surgery.

[¶ 6] The appellee submitted his medical bills to the Division and on October 31, 2006, the Division denied his claim for benefits finding that he failed to meet the requirements of Wyo. Stat. Ann. § 27–14–605, which statute governs modification of benefits previously awarded. The appellee timely objected to this determination and on August 14, 2007, the OAH held a hearing on the appellee's claim. The hearing examiner's Findings of Fact, Conclusions of Law and Order, issued on September 12, 2007, upheld the denial of benefits concluding that the appellee had failed to prove that his 2006 symptoms were caused by his 1979 work-related injury. On October 12, 2007, the appellee filed a Petition for Judicial Review of Agency Action challenging the OAH's decision. On July 28, 2008, the district court issued a decision letter reversing the OAH's decision and on August 22, 2008, entered an order remanding the matter to the Division with instructions to award benefits.

## STANDARD OF REVIEW

[¶ 7] When considering an appeal from a district court's review of an administrative agency's action, we give "no special deference to the district court's decision," but instead review the case as if it had come directly from the administrative agency. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Our review

of an administrative agency's action is governed by the Wyoming Administrative Procedure Act, which provides in pertinent part that the reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009). This appeal presents both a question of law (whether the proper burden of proof was applied) and a question of fact (whether the agency's determination that the appellee failed to satisfy that burden was supported by substantial evidence). Questions of law are reviewed *de novo*. *Sheth v. State ex rel. Wyo. Workers' Comp. Div.*, 11 P.3d 375, 378–79 (Wyo.2000). "Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law." *Bailey v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 145, ¶ 9, 55 P.3d 23, 26 (Wyo.2002) (internal citations omitted) (quoting *State ex rel. Workers' Safety & Comp. Div. v. Garl*, 2001 WY 59, ¶ 9, 26 P.3d 1029, 1032 (Wyo.2001)).

---

1. The MRI revealed the following: mild disc degeneration at the L1–2 level without significant bulging or herniation, disc dehydration and broad-based anterior and posterior disc bulging and facet arthropathy and bilateral facet arthropathy at L2–L3, mild disc degeneration without herniation and severe facet arthropathy and ligamentum flavum hypertrophy at L3–L4, a left paracentral disc protrusion which extends inferiorly along the posterior margin of the L5 vertebral body within the lateral recess which likely impinges on the left L5 nerve root at L4–L5, and a right paracentral disc protrusion with annular tear which appeared to abut the exiting L5 nerve root at L5–S1.

[¶ 8] With regard to factual questions, we recently reiterated in *Dale v. S & S Builders* how the substantial evidence standard of review should be applied:

> Because contested case hearings under Wyoming's Administrative Procedures Act, are formal, trial-type proceedings, use of the substantial evidence standard for review of evidentiary matters is more in keeping with the original intent of the drafters of the administrative procedures act.
>
> Thus, in the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling. When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

*Dale,* 2008 WY 84, ¶¶ 21–22, 188 P.3d at 561 (internal citations omitted).

**2.** Wyo. Stat. Ann. § 27–14–605, entitled "Application for modification of benefits; time limitation; grounds; termination of case; exceptions" reads:

> (a) If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional benefits or for a modification of the amount of benefits on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud. The division may, upon the same grounds and within the same time period, apply for modification of medical and disability benefits to a hearing examiner or the medical commission, as appropriate.

## DISCUSSION

**1. *Did the hearing examiner apply the proper burden of proof when denying the appellee's request for benefits under the second compensable injury rule?***

[¶ 9] Wyoming law has long recognized that a single incident at work can give rise to more than one compensable injury. *See Baldwin v. Scullion,* 50 Wyo. 508, 62 P.2d 531, 539 (1936). This principle, referred to as the second compensable injury rule, applies when "an initial compensable injury ripens into a condition requiring additional medical intervention." *Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 12 P.3d 170, 172 (Wyo.2000). When asserting a claim for a second compensable injury, the claimant has the burden of proving his claim by a preponderance of the evidence. *Walsh v. Holly Sugar Corp.,* 931 P.2d 241, 243 (Wyo.1997).

[¶ 10] To define the burden of proof applicable to the second compensable injury rule, we have contrasted it with the burden articulated in Wyo. Stat. Ann. § 27–14–605 (LexisNexis 2009), which statute governs claims for modification of benefits based on an increase or decrease in capacity, mistake or fraud.[2] Both the statute and the second compensable injury rule govern claims for benefits following a compensable injury; however, each applies in different circumstances and carries a distinct burden of proof.

> (b) Any right to benefits shall be terminated and is no longer under the jurisdiction of this act if a claim for any benefit is not filed with the division within the four (4) year limitation prescribed under subsection (a) of this section.
> (c) A claim for medical benefits which would otherwise be terminated under subsection (b) of this section and barred under W.S. 27–14–503(a) and (b) may be paid by the division if the claimant:
> > (i) Submits medical reports to the division substantiating his claim;
> > (ii) Proves by competent medical authority and to a reasonable degree of medical certainty that the condition is directly related to the original injury; and
> > (iii) Submits to an examination by a health care provider selected by the division and results of the examination validate his claim.

Wyo. Stat. § 27–14–605 applies to original benefits awarded after a determination in favor of the employee. Medical and temporary total disability benefits awarded at a later date pursuant to the second compensable injury rule are not among the benefits the statute controls. Wyo. Stat. § 27–14–605 rests on the premise that following an initial determination in favor of an injured employee, any party may, within four years of the award, seek to modify the benefits awarded. To modify the initial award, one must rely on Wyo. Stat. § 27–14–605.

*Casper Oil Co. v. Evenson*, 888 P.2d 221, 225 (Wyo.1995). "Under the second compensable injury rule, a worker who has received a compensable injury and received benefits for that injury can, regardless of the passage of time, receive more benefits for that compensable injury without meeting either of the time limits or increased burden of proof found in Wyo. Stat. Ann. § 27–14–605 (LexisNexis 2001)." *Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 90, ¶ 10, 48 P.3d 1057, 1062 (Wyo.2002).

[¶ 11] Under Wyo. Stat. Ann. § 27–14–605, the claimant must prove to a "reasonable degree of medical *certainty*" that the increase or decrease in capacity is "due *solely to the injury.*" Wyo. Stat. Ann. § 27–14–605(a) and (c)(ii) (emphasis added). The claimant must show "he has sustained additional incapacity entirely as a result of the injury in order to collect additional benefits." *Loghry v. Capshaw Well Serv.*, 739 P.2d 1227, 1228 (Wyo.1987). A showing that the increase in incapacity was "more proba-

bly than not caused by the original injury" is insufficient. *Woodman v. Grace Bomac Drilling*, 736 P.2d 313, 315–16 (Wyo.1987). In contrast, we have said that under the second compensable injury rule, the claimant only has to demonstrate that it is *"more probable than not"* that the first and second injuries are related.[3] *Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 996 P.2d 679, 685 (Wyo.2000) (emphasis added).

We have ruled in a different medical context that the causal connection between an accident or condition at the workplace is satisfied if the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the precipitation, aggravation or acceleration of the injury. *Claim of Taffner*, 821 P.2d 103, 105 (Wyo.1991). We do not invoke a standard of reasonable medical certainty with respect to such causal connection. *Kaan v. State ex rel. Wyoming Worker's Compensation Div.*, 689 P.2d 1387, 1389 (Wyo.1984) (citing *Jim's Water Service v. Eayrs*, 590 P.2d 1346 (Wyo.1979)). Testimony by the medical expert to the effect that the injury "most likely," "contributed to," or "probably" is the product of the workplace suffices under our established standard. *Kaan*, 689 P.2d at 1389....

This record discloses that under either the "reasonable medical probability" or "more probable than not" standard, Pino succeeded in demonstrating the causal connection by a preponderance of the evidence.

*Id.* at 685. Thus, in a second compensable injury case, the claimant must show, by a

---

3. We have used a number of terms to describe the required causal connection between the first and second injuries including: "direct cause" (*Pino v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 996 P.2d 679, 684 (Wyo.2000); *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2003 WY 83, ¶ 12, 72 P.3d 799, 803 (Wyo. 2003)); "caused by" (*Casper Oil Co. v. Evenson*, 888 P.2d 221, 226 (Wyo.1995)); "causally related to" (*Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 46, ¶¶ 26–27, 204 P.3d 967, 973–74 (Wyo.2009); *Walsh v. Holly Sugar Corp.*, 931 P.2d 241, 243 (Wyo.1997)); "direct causal connection" (*Alvarez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY 126, ¶ 17, 164 P.3d 548, 552 (Wyo.2007)); "direct and natural result" (*Stewart v. State ex rel. Wyo. Workers'*

*Safety & Comp. Div.*, 2007 WY 58, ¶ 12, 155 P.3d 198, 203 (Wyo.2007) (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 10.10, at 10–2 (2006))); "significant causal connection" and "predominant cause" (*Yenne–Tully v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 90, ¶ 11, 48 P.3d 1057, 1062 (Wyo.2002)); "fairly be traced to" and "a contributing cause" (*State ex rel. Wyo. Workers' Safety & Comp. Div. v. Bruhn*, 951 P.2d 373, 377 (Wyo.1997)). Regardless of the terminology used to describe the causal connection, the burden remains the same: the claimant must show, by a preponderance of the evidence, that it is more probable than not that the second injury was caused by the first.

preponderance of the evidence, that it is more probable than not that there exists a causal connection between the first and second injuries.

[¶ 12] The appellee argues that the hearing examiner used the wrong burden of proof when applying the second compensable injury rule. Specifically, the appellee contends that the hearing examiner required the appellee to prove his case under the stricter burden set forth in Wyo. Stat. Ann. § 27–14–605. We disagree. Regarding the burden of proof, the hearing examiner, in his Findings of Fact, Conclusions of Law and Order, wrote the following:

> 38. The second compensable injury rule is alive and well in Wyoming. . . .

> 39. Under the second compensable injury rule, a worker who has received a compensable injury and received benefits for that injury can, regardless of the passage of time, receive more benefits for that compensable injury without meeting either of the time limits or increased burden of proof found in Wyo. Stat. Ann. § 27–14–605 (LEXIS 2003). In order for a second injury to be compensable, the original compensable injury must itself be the direct cause of the subsequent injury. . . .

> . . . .

> 42. While sympathetic to [the appellee's] current situation, this Office cannot ignore the burden of proof requirement that [the appellee] prove, by a preponderance of the evidence, his 2006 need for low back surgery is directly related to the [sic] his February 19, 1979 injury.

> . . . .

> 48. Dr. Rangitsch, like Dr. Plate, provided it was **possible** [the appellee]'s 1979 work injury could have contributed to [the appellee]'s 2006 need for treatment; however, Dr. Rangitsch was very clear that he could **not** say to a reasonable degree of medical probability that [the appellee]'s current need for treatment was related to the original injury 28 years prior. . . .

> 49. . . . Even under the more lenient second compensable injury rule, [the appellee] still must prove his current need for treat-

ment is directly related to the original work injury.

(Emphasis in original.)

[¶ 13] The hearing examiner explicitly acknowledged that the stricter burden of proof of Wyo. Stat. Ann. § 27–14–605 is not applicable in this case, and referred to the second compensable injury rule as being "more lenient." Further, the hearing examiner's finding that the appellee was required to show the causal connection to a reasonable degree of medical probability, rather than requiring the appellee to show that the second injury was "due solely to" the original compensable injury, indicates the hearing examiner used the proper burden of proof. From these findings, and from the hearing examiner's application of the burden of proof to the evidence before him, which we will discuss in the next section, we conclude that the hearing examiner applied the proper burden of proof.

**2. Was the hearing examiner's decision denying benefits to the appellee against the great weight of the evidence?**

[¶ 14] To prove his second compensable injury claim, the appellee relied on the expert testimonies of Dr. James Plate, his treating family physician, and Dr. Mark Rangitsch, the orthopedic surgeon who performed an Independent Medical Examination upon him. As noted above, to meet his burden, the appellee was required to present evidence that it was more probable than not that the 2006 injury was directly related to the 1979 injury. On direct examination, Dr. Plate testified as follows:

> Q. [By Appellee's Counsel:] And, Doctor, do you have an opinion whether this '79, 1979 injury progressed into the present condition with [the appellee]'s back, requiring additional medical treatment?

> A. [By Dr. Plate:] Well, my opinion is that I think it could. I do not have an opinion that says I am sure that it happened from '79. I certainly think that his back injury in '79 may have predisposed him to some of the changes that have happened along the way.

I am appreciative that he has been a hard-working person and in a lot of times heavy lifting situation subsequent even to '79 and I think those things could have either, number 1, aggravated a preexisting condition or, number 2, caused his conditions primarily.

Unfortunately, I don't know that anyone or anything can retrospectively define what exactly caused his final scenario; in other words, he's in the condition he's in today based on his previous experiences, but which one of them and how much of each one of them caused it is a very difficult thing to try to define. That is kind of a gray opinion, I understand, but I don't think I can give you anything more clarified.

On cross examination, Dr. Plate was unable to offer a more definitive medical opinion as to the causal relationship between the first and second injuries:

Q. [By Division's Counsel:] But it appears to me your testimony is that just based on the period, the passage of time, that you are unable to see any objective evidence to make a determination to a reasonable degree of medical probability that the 1979 injury is the direct cause of the current symptoms. Is that also a fair statement?

A. [By. Dr. Plate:] Yeah. I think it's a gray statement, but it's probably a summary statement.

Q. Okay. You're just unable to state to a reasonable degree of medical probability whether the '79 injury caused his current symptoms, is that right?

A. Right. I think I alluded that I said it could predispose him to several things that can change with time.

Similarly, on direct examination, Dr. Rangitsch was unable to say that it was more probable than not that the 2006 injury and the original 1979 compensable injury were related.

Q. [By Appellee's Counsel:] Down in paragraph number one in response to a question from Mr. Jackson, it says, "Are [the appellee]'s current complaints of back pain from 9–19–06 directly and solely related to his original work injury of 2–19–79?" And you say, "They may be related."

Can you tell me what you based that on?

A. [By Dr. Rangitsch:] I base that on the force again that created. I mean, I also—I state that it looks like he had an intervening problem [in 1993] and he was lifting and that being as good of a reason as the [1979] injury to have the problems he is having.

Q. Okay. But do you know to any degree of medical certainty [4] whether it's the intervening accident that is the cause or the '79 injury that is the cause of his problems today?

A. I can't say either way.

. . . .

Q. So it's possible that the '79 injury could ripen or cause or result in an injury that he has experienced in 2006?

A. Yes.

Q. Can you say to a reasonable degree of medical certainty whether it would be?

A. No, I would say it's way too far remote to say that. I can't link the two completely. I can just say it's a possibility.

. . . .

Q. . . . So the gist of what I got from your report was that you can't say what he is experiencing in 2006 is or is not related to the 1979 injury?

A. Correct.

Like Dr. Plate, on cross-examination, Dr. Rangitsch testified that he could not relate the 1979 injury to the symptoms the appellee experienced in 2006:

Q. [By the Division's Counsel:] And I guess I will follow up one more, I said that was my last question, but basically, if I understand you correctly, based upon the period of time from 1979 until now, and based upon that there was an intervening

---

4. The appellee's counsel asked about "reasonable medical certainty." This language is consistent with Wyo. Stat. Ann. § 27–14–605, which statute, as the appellee points out, does not apply to the present proceedings. Thus, it can be reasonably assumed that the appellee's counsel meant "reasonable medical probability."

event in 1999, it's just difficult for you to give an opinion whether or not the current symptoms are related to the '79 injury. Is that a fair statement?

A. [By Dr. Rangitsch:] Well, you said '99, it's '93.

Q. Sorry. Yes, '93.

A. That's a fair statement.

[¶ 15] Based on this testimony, the hearing examiner found:

47. Dr. Plate, [the appellee]'s long term treating physician, admitted repeatedly that he could not directly relate [the appellee]'s 2006 need for treatment to the February 19, 1979 injury. Dr. Plate testified the 1979 injury **could have** predisposed [the appellee] to degenerative changes, but Dr. Plate could not say the 1979 injury actually did cause the current problems with [the appellee]'s back. Dr. Plate admitted that no objective evidence existed to prove [the appellee]'s 2006 need for treatment was related to the 1979 injury and any attempt to do so would be mere speculation.

48. Dr. Rangitsch, like Dr. Plate, provided it was **possible** [the appellee]'s 1979 work injury could have contributed to [the appellee]'s 2006 need for treatment; however, Dr. Rangitsch was very clear that he could **not** say to a reasonable degree of medical probability that [the appellee]'s current need for treatment was related to the original injury 28 years prior. Dr. Rangitsch testified that due to the lack of testing in 1979, the passage of time, [the appellee]'s return to physical labor and [the appellee]'s intervening 1993 injury, it was not possible to relate [the appellee]'s current need for treatment to the 1979 injury.

(Emphasis in original.) The hearing examiner concluded "[t]here is no competent medical evidence which demonstrate[s] that [the appellee]'s current chronic low back pain and herniated disk [sic] is directly related to the February 19, 1979 work injury."

[¶ 16] In an effort to show that the hearing examiner's determination was against the great weight of the evidence, the appellee points to portions of testimony simi-

lar to those quoted above, where Dr. Rangitsch and Dr. Plate testified that the 1979 injury "could have contributed," or "may be" related to the 2006 symptoms, that the 1979 injury "could predispose" the appellee to future back injury, that it was "possible" that the appellee had undiagnosed injuries from the 1979 injury, and that the original injury "could have progressed" into the 2006 condition. The appellee does not argue that these statements, or anything in the record, establish that it is more probable than not that the first injury was causally related to the second injury; rather, the appellee claims that under the second compensable injury rule, his burden is only to show that "the 1979 injury predisposed and contributed in some fashion" to his current condition. The appellee cites no authority where "predisposed and contributed in some fashion" was the burden of proof used in a second compensable injury case, and we likewise found none. Whether a first injury predisposed an individual to a second injury may be a factor considered in determining whether a claimant has satisfied his burden of proof. *See Pino*, 996 P.2d at 686–87. However, such a finding, without an ultimate conclusion that it is more probable than not that the second injury was causally related to the first, is inadequate. Also, to allow claimants to seek benefits for a second compensable injury requiring only that the claimant show that the first injury "contributed in some fashion" to the second is an unworkable standard that would open the door to tenuous, vague, and even contrived claims.

[¶ 17] We will briefly discuss two previous second compensable injury cases to illustrate application of the rule, focusing particularly on the nature of the evidence required to satisfy the burden of proof. In *Walsh v. Holly Sugar Corp.*, 931 P.2d 241 (Wyo.1997), the claimant was treated for low back pain of an unknown origin in 1984. *Id.* at 242. In 1989, he suffered a compensable back injury. *Id.* at 243. In 1993, the claimant asserted a claim for a second compensable injury after re-injuring his back while working at his farm. *Id.* The claimant's physician testified:

Q (BY [COUNSEL]) If the 1989 injury had not happened, assume that, it is just as possible that as a result of his 1984

problems that this 1993 injury would have cropped up, isn't it?

A  Yes.

* * *

Q  [BY COUNSEL] Okay. And despite that, you still make your opinion that there's some connection, in your mind, between the '93 injury and the '89 injury?

A  Yes.

* * *

Q  [BY COUNSEL] And so I understand you, it's just basically you're speculating on this '93 injury and how it relates back to the '89 injury, are you not?

A  It occurred or is it speculation?

Q  To tie it together, you're speculating that those things are tied together?

A  Yes.

*Id.* at 243–44.  We affirmed the district court's finding that the second injury was not causally related to the first, stating "that it could be fairly summarized that the current problem could be causally related to the 1989 injury and that it could just as well not be related to the 1989 injury." *Id.* at 243.

[¶ 18]  Here, like in *Walsh,* one of the doctors testified that the intervening injury was "as good of a reason as the [1979 injury] to have the problems he is having."  We have held that "speculative medical testimony is insufficient to satisfy a claimants burden of proof." *Anastos v. Gen. Chem. Soda Ash,* 2005 WY 122, ¶ 21, 120 P.3d 658, 666 (Wyo. 2005).  Just as we found in *Walsh,* speculation as to the cause of the second injury falls short of the requirement that the claimant show it is more probable than not that his second injury is causally related to the first.

[¶ 19]  Another illustrative case is *Chavez v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2009 WY 46, 204 P.3d 967 (Wyo.2009).  There the claimant sustained a compensable back injury in 1989.  *Id.* at ¶ 4, 204 P.3d at 968.  The claimant underwent back surgery in 1991, which surgery was paid for by the Division. *Id.* at ¶¶ 5, 7, 204 P.3d at 969.  The claimant continued suffering back pain until 2006, when he underwent a second surgery to "decompress and fuse the third, fourth, and fifth lumbar vertebrae." *Id.* at ¶ 6, 204 P.3d at

969.  The claimant requested, and was denied, benefits for the second surgery.  *Id.* at ¶ 7, 204 P.3d at 969.  At the hearing, the testimony of two physicians presented conflicting opinions concerning whether the 2006 surgery was causally related to the 1989 injury.  *Id.* at ¶¶ 8, 15, 16, 204 P.3d at 969, 970–71.  On appeal, we affirmed the denial of benefits, stating:

> As discussed above, Dr. Beer's opinion was that Mr. Chavez's 2006 surgery was causally related to the initial compensable work injury he received in 1989.  If the Commission had accepted Dr. Beer's opinion, that might have been a sound basis for awarding benefits to Mr. Chavez under the second compensable injury rule.  What Mr. Chavez overlooks, however, is that the Commission explicitly chose to give more weight to the opinion of Dr. Ruttle, who testified that Mr. Chavez's 2006 surgery was not the result of the incident in 1989.  This testimony supported the Commissions finding that the 2006 surgery was not causally related to the compensable work injury that occurred in 1989.

*Id.* at ¶ 27, 204 P.3d at 974.

[¶ 20]  Unlike in *Chavez,* the hearing examiner in the present case did not have to weigh or decide whether to consider one doctor's testimony over the other's, as neither doctor was able causally to relate the second injury to the first.  Without some testimony or other evidence showing it was more probable than not that the second injury was caused by the first, the claimant cannot satisfy his burden of proof.

## CONCLUSION

[¶ 21]  We find that, as a matter of law, the hearing examiner used the proper burden of proof when deciding whether the appellee was entitled benefits under the second compensable injury rule.  Also, after reviewing the entire record, we hold that the hearing examiner's conclusion that the appellee was unable to prove that his 2006 condition was related to the 1979 injury, and thus compensable as a second compensable injury, is supported by substantial evidence. Thus, we will reverse the decision of the district

court and remand for proceedings consistent with this opinion.