# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 42

APRIL TERM, A.D. 2017

April 27, 2017

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

KAREN HARDY,

Appellant
(Petitioner),

v.                                                                    S-16-0220

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Campbell County*
The Honorable John R. Perry, Judge

*Representing Appellant:*
    Matthew R. Sorenson of Daly & Sorenson, LLC, Gillette, Wyoming.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; Daniel E. White, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Benjamin Eliazar Fischer, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Karen Hardy appeals the district court's order affirming the Office of Administrative Hearing's (OAH) decision denying workers' compensation benefits to Ms. Hardy for an injury to her lower back.  Ms. Hardy argues that she is entitled to benefits under the second compensable injury rule.  We affirm.

## ISSUE

[¶2]   Ms. Hardy raises one issue in this appeal:

> Whether the district court erred in affirming the administrative agency's finding that [Ms. Hardy's] injury was not compensable[.]

## FACTS

[¶3]   On April 3, 2013, Ms. Hardy was working at the Home Depot in Gillette, Wyoming.  She was moving bricks and large bags of potting soil when she felt pain in her left shoulder and back.  On April 11, 2013, she sought medical treatment for that pain at the Campbell County Memorial Hospital Walk-In Clinic.  The physician's assistant who treated her prescribed medication for the pain and suggested she come back in a week.  Ms. Hardy returned to the clinic on April 18, 2013, and informed the physician's assistant that her pain was improving.  The physician's assistant instructed Ms. Hardy to continue icing her shoulder and taking ibuprofen for pain.

[¶4]   On June 18, 2013, Ms. Hardy returned to the walk-in clinic, this time seeking treatment for a different work injury.  Ms. Hardy explained that on May 11, 2013, she tripped and fell at Home Depot and subsequently had been suffering from right knee pain for five weeks.  She also stated she had been terminated from her employment with Home Depot.  Significantly, the progress note indicates that Ms. Hardy denied suffering from any back pain on that day.  Thereafter, Ms. Hardy was treated by Dr. John Dunn at Powder River Orthopedics and Spine, who ultimately performed a right knee arthroscopy, partial medial meniscectomy.  The record contains notes from Ms. Hardy's four different office visits with Dr. Dunn between July 22, 2013, and September 19, 2013, and in none of those notes does Dr. Dunn indicate that Ms. Hardy had any complaints of back pain.  On September 27, 2013, Ms. Hardy again returned to the walk-in clinic seeking treatment for pain and swelling in her knee post surgery.  The progress note states she denied any back pain at that visit.

[¶5]   On May 14, 2015, Ms. Hardy sought treatment at the walk-in clinic for low back pain she had been suffering for six days.  According to the progress note, Ms. Hardy said she injured her back by bending, twisting, and lifting at work on May 9, 2015.  At this

point in time, she was working in the produce department and as a cashier at Don's Supermarket in Gillette. Deborah Johnston, the physician's assistant who treated Ms. Hardy, instructed her to refrain from heavy lifting for one week, to alternate heat and ice multiple times a day, and to return to the clinic if the symptoms did not improve. She returned to the walk-in clinic on May 22, 2015, and the progress note from that visit states she received a work injury on May 15, 2015. Ms. Johnston also noted that when she entered the treatment room, Ms. Hardy was crying, in pain, and stated she did not know what to do. She stated she did not have health insurance, could not quit her job, and that she called the Wyoming Workers' Compensation Division (the Division) and was told she could not reopen her claim from 2013. In addition to prescribing medication and advising on how to care for herself, Ms. Johnston suggested that Ms. Hardy contact the Division again to try to get her old claim re-opened. She also suggested that Ms. Hardy seek treatment from an orthopedist.

[¶6]    On May 28, 2015, Ms. Hardy saw Dr. Nathan Simpson at Powder River Orthopedics and Spine. She informed Dr. Simpson that her back hurt from an injury she sustained on April 11, 2013, while working at Home Depot. She stated that since the injury she had experienced continually worsening pain. She did not mention that she had been injured at Don's Supermarket in May 2015 or that she had sought treatment at the walk-in clinic earlier in the month. Dr. Simpson recommended that Ms. Hardy receive an MRI of her lumbar spine. From the MRI, Dr. Simpson determined that Ms. Hardy was suffering from a small annular tear and facet degenerative joint disease.

[¶7]    The bills from Ms. Hardy's 2015 doctor visits were submitted to the Division. The Division denied payment for all of the bills on the basis that Ms. Hardy's May 9, 2015 back injury was not related to the injuries she sustained on April 3 or May 11, 2013. Ms. Hardy objected to the Division's final determination and requested a hearing with the OAH.

[¶8]    At the hearing, the OAH hearing examiner considered all of the medical records, Ms. Hardy's testimony, and the depositions of Ms. Johnston and Dr. Simpson. The hearing examiner determined that Ms. Hardy had failed to prove by a preponderance of the evidence a causal connection between her April 3, 2013 work-related injury and her 2015 back injury. Ms. Hardy appealed the decision to the district court, and it affirmed the hearing examiner's determination. Ms. Hardy timely appealed to this Court.

**STANDARD OF REVIEW**

[¶9]    Wyoming statute § 16-3-114(c) (LexisNexis 2015) governs judicial review of agency actions:

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant

2

questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶10] Using this framework, this Court reviews the agency's findings of fact under the substantial evidence standard. *Price v. State ex rel. Dep't of Workforce Servs.*, 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017). When reviewing an agency's decision that a claimant did not satisfy her burden of proof, we apply the following standard:

If the hearing examiner determined that the burdened party failed to meet [her] burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 878, 860-61 (Wyo. 1994); *Board of*

3

> *Trustees, Laramie County School Dist. No. 1 v. Spiegel*, 549
> P.2d 1161, 1178 (Wyo. 1976) (discussing the definition of
> substantial evidence as "contrary to the overwhelming weight
> of the evidence"). If, in the course of its decision making
> process, the agency disregards certain evidence and explains
> its reasons for doing so based upon determinations of
> credibility or other factors contained in the record, its
> decision will be sustainable under the substantial evidence
> test. Importantly, our review of any particular decision turns
> not on whether we agree with the outcome, but on whether
> the agency could reasonably conclude as it did, based on all
> the evidence before it.

*Hood v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2016 WY 104, ¶
14, 382 P.3d 772, 776 (Wyo. 2016) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84,
¶ 22, 188 P.3d 554, 561 (Wyo. 2008)). Additionally, we review the agency's decision as
if it had come directly from the administrative agency and we afford no deference to the
district court's decision. *Price*, ¶ 7, 388 P.3d at 789.

## DISCUSSION

[¶11] Ms. Hardy argues the hearing examiner improperly concluded that she failed to
prove the injuries she sought treatment for in 2015 were causally connected to the back
injury she received in 2013 at Home Depot. She asserts that Dr. Simpson's treatment
notes link the 2015 injury to the 2013 injury and he testified at his deposition that the
2015 injury was a continuation of the original 2013 injury; therefore, the 2015 injury was
a second compensable injury. She further claims that since the Division did not present
any medical testimony to contradict Dr. Simpson's testimony, the hearing examiner's
conclusion that the 2015 injury was not compensable was contrary to the overwhelming
weight of the evidence presented at the hearing.

[¶12] Wyoming law recognizes that "a single incident at work can give rise to more than
one compensable injury." *Kenyon v. State ex rel. Wyo., Worker's Safety & Comp. Div.*,
2011 WY 14, ¶ 15, 247 P.3d 845, 850 (Wyo. 2011); *see also State ex rel. Wyo. Worker's
Safety & Comp. Div. v. Kaczmarek*, 2009 WY 110, ¶ 9, 215 P.3d 277, 281-82 (Wyo.
2009); *Carabajal v. State ex rel. Wyo. Worker's Safety & Comp. Div.*, 2005 WY 119, ¶
12, 119 P.3d 947, 951-52 (Wyo. 2005); *Baldwin v. Scullion*, 50 Wyo. 508, 62 P.2d 531,
539 (1936). This is referred to as the second compensable injury rule and "applies when
'an initial compensable injury ripens into a condition requiring additional medical
intervention.'" *Kenyon*, ¶ 15, 247 P.3d at 850 (quoting *Yenne-Tully v. State ex rel. Wyo.
Workers' Safety & Comp. Div.*, 12 P.3d 170, 172 (Wyo. 2000)). In order to show that an
injury qualifies under the second compensable injury principle, the claimant must show,
by a preponderance of the evidence, that it is more probable than not that a causal

4

connection exists between the first and second injuries. *Kaczmarek*, ¶ 11, 215 P.3d at 282-83. This standard does not require the claimant to prove to a degree of medical certainty that the second injury is due solely to the first injury, and medical testimony that establishes the first injury contributed to the second injury, or most likely caused the second injury, or probably caused the second injury suffices under this standard. *Id.* at 282; *State ex rel. Wyo. Worker's Safety & Comp. Div. v. Armijo*, 2004 WY 116, ¶ 8, 99 P.3d 445, 449-50 (Wyo. 2004). However, medical testimony in terms of "can," "could," or "possibly" is insufficient to meet a claimant's burden of proof. *Boyce v. State ex rel. Wyo., Worker's Safety & Comp. Div.*, 2005 WY 9, ¶ 22, 105 P.3d 451, 458 (Wyo. 2005).

[¶13] Here, the hearing examiner concluded that Ms. Hardy failed to provide a causal connection between her 2015 and 2013 back injuries. Ms. Hardy argues that conclusion is "contrary to the overwhelming weight of the evidence" and should be reversed. After a thorough review of the record, we find the record contains substantial evidence to support the hearing examiner's conclusion.

[¶14] The hearing examiner found it significant that Ms. Hardy denied any back pain when she was treated for a knee injury in 2013, not long after she suffered the back injury at Home Depot. The medical records from that time frame are contained in the record and confirm that Ms. Hardy denied suffering from back pain. Although Ms. Hardy testified she had informed Ms. Johnston in 2015 about the 2013 Home Depot injury, the medical records indicate otherwise. According to the progress note from the May 14, 2015 appointment, Ms. Hardy informed Ms. Johnston that she had suffered a work related injury from bending, twisting, and lifting on May 9, 2015, and had been suffering back pain for six days. Further, the note from her visit on May 22, 2015, states Ms. Hardy suffered a work related injury on May 15, 2015. Significantly, neither of those notes contained any information about the injury at Home Depot in 2013, although both notes state that Ms. Hardy had suffered injuries to her back in the past, which include back strain.

[¶15] Ms. Johnston's deposition testimony was consistent with the information contained in the medical records and does not support Ms. Hardy's testimony. She testified that Ms. Hardy told her that her back pain was caused from "bending, twisting incorrectly at work." When she was questioned about why the May 14 progress noted stated Ms. Hardy was injured at work on May 9, and the May 22 progress note stated she was injured on May 15, Ms. Johnston responded that Ms. Hardy must have reported that she injured her back for a third time on May 15. Ms. Johnston could not recall who Ms. Hardy's employer was at the time, but her recollection was that Ms. Hardy was working as "a stocker or something like that." This recollection was correct, as Ms. Hardy was employed by Don's Supermarket and her primary duties were stocking produce and being a cashier.

[¶16] Despite the existence of all of this evidence that does not support Ms. Hardy's claim, Ms. Hardy seems to take most issue with the fact the hearing examiner did not accept Dr. Simpson's opinion that Ms. Hardy's 2015 back injury was directly related to her 2013 back injury at Home Depot. She argues the hearing examiner should have accepted Dr. Simpson's medical opinion because the Division did not present any medical evidence to rebut Dr. Simpson's opinion. A hearing examiner, however, is not required to accept a medical opinion simply because the other party did not present any evidence to refute that opinion. In a contested case hearing, the fact finder—the OAH hearing examiner in this instance—"must evaluate the medical records and testimony, including medical expert testimony, and determine the weight of the available evidence". *DelaCastro v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 40, ¶ 23, 321 P.3d 327, 333 (Wyo. 2014). When weighing the evidence presented, the fact finder "'is entitled to disregard an expert opinion if [he] finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant.'" *Id.* (quoting *Watkins v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 49, ¶ 25, 250 P.3d 1082, 1090-91 (Wyo. 2011); *David v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2007 WY 22, ¶ 15, 151 P.3d 280, 290 (Wyo. 2007). "The task of determining the credibility of witnesses and weighing the evidence is assigned to the [hearing examiner] and its determination will be overturned only if it is clearly contrary to the great weight of the evidence." *Hoffman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 164, ¶ 23, 291 P.3d 297, 305 (Wyo. 2012).

[¶17] The hearing examiner acknowledged Dr. Simpson's medical opinion regarding Ms. Hardy's back injury, but it was significant to him that Ms. Hardy had not provided Dr. Simpson with the medical records from the 2015 visits to the walk-in clinic. After the Division contacted Dr. Simpson to request more information about Ms. Hardy's 2015 injury and how it related to the 2013 injury, Dr. Simpson responded that he did not know that Ms. Hardy had been treated at the walk-in clinic immediately before she sought treatment from him. He also explained he was not aware that Ms. Hardy had told the staff at the walk-in clinic that she had suffered an injury at work in May of 2015 or that she had already called the Division and been told she could not reopen her case from 2013. Based upon this information, Dr. Simpson stated there was an obvious discrepancy between the information Ms. Hardy provided to the walk-in clinic and to his office. His deposition testimony was clear that his opinion that Ms. Hardy's back pain had been a continuation of her injury at Home Depot was based upon the information provided to Dr. Simpson by Ms. Hardy. The hearing examiner's decision to reject Dr. Simpson's medical conclusion was reasonable considering the conclusion was made with incomplete information. *See DelaCastro*, ¶ 23, 321 P.3d at 333.

[¶18] Further, although Dr. Simpson had concluded Ms. Hardy's current injury was a continuation of the 2013 injury, he could not testify with any degree of certainty to

support that conclusion.  The following exchange occurred between Dr. Simpson and Ms. Hardy's counsel:

> [Counsel]:   And, so, if she had fallen in 2013, and injured her back, would lifting heavy objects aggravate any sort of back injury that would have resulted?
>
> [Dr. Simpson]:      It could []; yes.
>
> Q.     Is it probable that that had occurred?
>
> A.     I can only go by what my, what my note shows.

Dr. Simpson also could not state that the annular tear was a result of the Home Depot injury.

> Q.     . . . The anular [sic] tear that you saw on Ms. Hardy, would that be consistent with the Home Depot fall that she described to you?
>
> A.     It could be.  Like I said, - -
>
> Q.     Okay.
>
> A.     - - I can't tell for sure that that's a fact.  I can't tell the acuity of the injury.
>
> But, if you fall you can tear the disc.
>
> Q.     And, if she suffered that anular [sic] tear in 2013, [would] she continue having pain doing things such as lifting, twisting, et cetera, after the original fall?
>
> A.     It's possible.  But, most anular [sic] tears, in my experience, heal within 90 days.
>
> But, if it's still evidence [sic] on the MRI, it's possible that it would continue to cause pain.
>
> Q.     And, if it doesn't heal within 90 days on its own, is there any way that, you know, continued regular

7

everyday life can worsen it? Lifting, things of that nature; tearing, or, excuse me, twisting?

A. Yes. If it doesn't heal, it can become a chronic back pain problem.

Q. And, with the history that Ms. Hardy gave you, is it possible that this anular [sic] tear turned into chronic back pain problems in her case?

A. It's possible.

Q. Can you speak to any probability on that, or - -

A. No, I [really] can't. There's too many other confounding factors with the degenerative arthritis in the joints and the fact that she's overweight.

I, I can't speak to any degree of certainty.

[¶19] While Dr. Simpson may have opined during Ms. Hardy's office visits that her current injuries were a continuation of the 2013 Home Depot injury, there is certainly ample evidence in the record to support the hearing examiner's decision to give little weight to Dr. Simpson's opinion. The record shows his opinion was based upon, at best, incomplete information. Even assuming he had all of the correct information, he could not testify to any degree of certainty that the current injuries were caused by the original injury. At best, Dr. Simpson testified it is *possible* the 2013 injury caused the annular tear or could be aggravated by further lifting. This speculative testimony is insufficient to establish causation between the first and second injuries. *See Boyce*, ¶ 22, 105 P.3d at 458.

[¶20] The hearing examiner did not err when he assigned little weight to Dr. Simpson's ultimate medical opinion, and Ms. Hardy did not provide any medical evidence other than Dr. Simpson's testimony to prove that it is more probable than not that a causal connection exists between her current injury and the 2013 injury. Consequently, the hearing examiner's conclusion that Ms. Hardy failed to carry her burden of proof in this instance is not against the great weight of the evidence.

## CONCLUSION

[¶21] There is substantial evidence in the record to support the hearing examiner's conclusion that Ms. Hardy failed to demonstrate that it is more probable than not that the 2013 injury is causally related to her 2015 back injury. We affirm.

8